UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| MEHAKPREET SINGH,<br><br>Petitioner,<br><br>v.<br><br>MIKE LEWIS, et al.,<br><br>Respondents. | ) | Civil Action No. 4:26-cv-574-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on the Petitioner's Petition for a Writ of Habeas Corpus. [R. 1]. The respondents have filed a response, [R. 6], and Petitioner replied. [R. 9]. For the reasons set forth herein, the Court will grant the petition and order Petitioner's immediate release.

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). In seeking habeas relief, the petitioner bears the burden of proving by a preponderance of the evidence that his or her detention is unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

As grounds for relief, Petitioner argues that his prior order of release on recognizance was improperly revoked, without pre-deprivation notice and an opportunity to be heard, in violation of his due process rights. *See, e.g.*, [R. 1, p. 13–14]. He also argues that his detention in unjustified and unlawful in violation of his due process rights. *See, e.g.*, *id.* at 14–15. In response, the

respondents do not address Petitioner's argument that he was entitled to a *pre*-deprivation hearing (and notice) prior to the revocation of his order of release on recognizance. *See generally* [R. 6]. Instead, they argue that Petitioner is detained under 8 U.S.C § 1226 and is therefore entitled to a bond hearing, but he has not requested one, and further, he has failed to exhaust his administrative remedies. *Id.*

While Respondents' exhaustion arguments appear to be based on their position that Petitioner should have requested a bond hearing, the Court will nevertheless briefly consider exhaustion. Where, as here, "neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) (citing *Sims v. Apfel*, 530 U.S. 103, 108–110 (2000)). Under this third doctrine of "prudential exhaustion," the Sixth Circuit has stated that it is within the Court's "sound judicial discretion" whether to require exhaustion "[w]hen Congress has not clearly required exhaustion." *Id.*; *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). To determine whether prudential exhaustion should be required, courts within this circuit have applied the three-factor test, as set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. Aug. 29, 2025). Under that test, prudential exhaustion may be required when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-CV-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

In this case, each of the three *California Care* factors weigh against requiring prudential exhaustion. Regarding the first factor, the question presented by Petitioner is whether, after previously being released on his own recognizance, such release may be revoked without pre-deprivation notice and a pre-deprivation hearing. This is a purely legal question that does not require agency expertise "to generate a proper record and reach a proper decision." *California Care*, 729 F.2d at 1248. As to the second factor, because Petitioner alleges a constitutional violation of due process in his habeas petition, this court need not wait for ICE's appeal to an administrative review board—here, to the BIA—in order to reach the merits. *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, with respect to the third factor, Respondents insist that the Petitioner must seek a post-deprivation bond hearing, when the issue before the Court is whether he was entitled a *pre*-deprivation hearing (and notice), prior to the revocation of his order of release on recognizance. Given this position, the Court has no reason to believe that administrative review would "allow the agency to correct its own mistakes and preclude the need for judicial review." *Lopez-Campos*, 797 F. Supp. 3d at 778. As such, all three of the above-cited factors weigh against requiring prudential exhaustion.

Having concluded that Petitioner was not required to exhaust his administrative remedies in this case, the Court next considers whether he was entitled to a pre-deprivation hearing (and notice) prior to the revocation of his order of release on recognizance. In doing so, the Court again notes that Respondents do not address Petitioner's arguments regarding the revocation of his order of release on recognizance. At most, they argue that he could have received a bond hearing after being detained, if he had requested one. *See, e.g.*, [R. 6, pp. 5–7]. However, they provide no argument and cite to no authority suggesting that a bond hearing provides the requisite *pre-deprivation* notice and hearing required to revoke an order of release on recognizance. *See, e.g.*,

*Singh v. Clay County Justice Center*, Case No. 4:26-cv-408-CHB, at R. 26 (granting relief where an order of release on recognizance was revoked without a pre-deprivation hearing); *Singh v. Warden*, Case No., 5:26-cv-180-CHB, at R. 16 (same). As such, the Court finds that the respondents have waived their arguments on this issue. *See England v. Perkins*, No. 1:21-CV-00048-GNS, 2022 WL 2195207, at *6 (W.D. Ky. June 17, 2022) (finding that the failure to respond to an argument amounts to a waiver (citation omitted)).

The Court now turns to the merits of Petitioner's argument regarding the revocation of his order of release on recognizance. Petitioner was released on his own recognizance under § 1226 of the Immigration and Nationality Act and its implementing regulations, a fact the Respondents do not dispute. Such release on recognizance "is understood to be a conditional parole." *Patel v. Tindall*, 810 F. Supp. 3d 824, 832 (W.D. Ky. 2025) (citation omitted). Specifically, it is considered to be a conditional parole under § 1226(a). *Id.*; *see also Singh v. Noem*, 824 F. Supp.3d 1197, 1212 (D.N.M. 2026); *Resendiz v. Noem*, No. 4:25-CV-00159-GNS, 2025 WL 3527284, at *3 (W.D. Ky. Dec. 9, 2025); *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *4 (W.D. Ky. Nov. 20, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *6 (E.D. Cal. Sep. 18, 2025). That provision provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed," and the Attorney General may choose to continue that detention, release the alien on bond, or grant conditional parole. 8 U.S.C. § 1226(a). "To be released on conditional parole, there must be a finding that that the immigrant does not pose a risk of flight or danger to the community." *Espinoza*, 2025 WL 2675785, at *6 (citing *Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)); *see also* 8 C.F.R. § 1236.1(c)(8). However, "[t]he attorney general at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. § 1236.1(c)(9).

Nevertheless, "courts have consistently held that the Due Process Clause mandates that noncitizens who are released on their own recognizance . . . are entitled to some process before being re-detained." *Khabaza v. United States Immigration and Customs Enforcement*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *5 (S.D.N.Y. Nov. 25, 2025).

In determining whether a civil detention violates a detainee's due process rights, the Court applies the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Khabaza*, 2025 WL 3281514, at *5. Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Regarding the first factor, the Court finds that Petitioner has a significant private interest in remaining free from detention, and Respondents do not dispute this. As other courts have explained, a noncitizen

> has a significant liberty interest in remaining out of custody pursuant to his conditional parole. . . . Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates an implicit promise upon which that individual may rely, that their liberty will be revoked only if [they] fail[] to live up to the . . . conditions of release."

*Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (quoting *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)) (citation modified); *see also* *Salinas*, 2025 WL 3243837, at *3 (finding that the petitioner, who has been previously released on her own recognizance before being re-detained, had a significant private interest in not being detained). "The more than [two] years that [Petitioner] has spent out of custody since ICE initially

released [him] have only heightened [his] liberty interest in remaining out of detention." *Pinchi*, 792 F. Supp. 3d at 1034 (considering this issue in the context of injunctive relief and the likelihood of succeeding on the merits). This first factor therefore weighs in Petitioner's favor.

The Court next considers the risks of an erroneous deprivation of this liberty interest. In similar cases, where the petitioner had previously been released on conditional parole under § 1226, district courts have found that "the risk of an erroneous deprivation of [the liberty interest] is high" where the petitioner's "parole was revoked without . . . giving [him] an opportunity to be heard." *Faizyan*, 2025 WL 3208844, at *7 (quoting *Gonazalez Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025)) (internal quotation marks omitted). That is, "there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing" because "neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for [Petitioner's] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). Such detention (i.e., civil immigration detention) "is permissible only to prevent flight or protect against danger to the community." *Id.* (citation omitted). But here, Petitioner was released on conditional parole, which required a finding that he was not a flight risk nor a danger to the community. *See, e.g.*, *Espinoza*, 2025 WL 2675785, at *6. The respondents do not argue that any circumstances have changed (such that Petitioner would now be a flight risk or a danger to the community), or that his current detention in any way serves either purpose. "Under these circumstances, there is a significant risk that" Petitioner's detention, even if brief, "[is] not justified by any valid interest." *Pinchi*, 792 F. Supp. 3d at 1035. This second factor therefore weighs in Petitioner's favor. *See, e.g.*, *Khabaza*, 2025 WL 3281514, at *7; *Salinas,* 2025 WL 3243837, at *3.

Finally, the Court considers the government's interest, "including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Again, the respondents do not address any of the *Mathews* factors, so they have not identified any government interest for the Court to consider. And while they argue that Petitioner could have received a bond hearing, they do not explain what government interest is served in providing a bond hearing *after* revoking Petitioner's conditional parole, rather than providing a *pre*-detention opportunity to be heard. *See Pinchi*, 792 F. Supp. 3d 1025 (considering similar arguments). Respondents have likewise failed to explain how the cost of providing these protections would be fiscally or administratively onerous. Indeed, "custody hearings [in immigration court] are routine and impose a minimal cost." *Id.* (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)) (cleaned up); *see also Salinas*, 2025 WL 3243837, at *3. This third factor therefore weighs in Petitioner's favor.

Thus, each of the three *Mathews* factors weighs in Petitioner's favor. The Court therefore finds that, under the specific facts of this case and without any substantive response from the respondents as to this issue, Petitioner's detention without a pre-deprivation hearing violates his due process rights. Because a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A.T-B v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), the Court will order Petitioner's immediately release. *See, e.g.*, *Faizyan*, 2025 WL 3208844, at *8 (ordering immediate release under the same conditions as preexisting conditional parole); *Salinas*, 2025 WL 3243837, at *4–5 (finding immediate release was appropriate). The Court will therefore grant the petition and will order Petitioner's immediate release.

Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus, [**R. 1**], is **GRANTED**.

2. Respondents are **ORDERED** to release Petitioner forthwith from custody and are further **ORDERED** to certify compliance with the Court's order by filing a notice of compliance **no later than 12:00 PM (noon) on October 9, 2026**. Upon receipt of said notice, the Court will enter an order and judgment terminating this case.

This the 6th day of October, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY